UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 5:25-CR-00087-REW-MAS |
| ) | |
| CRAIG MARTEZ WILLIAMS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION & ORDER**

The Indictment alleges that Defendant Craig Martez Williams ("Williams") conspired to possess with intent to distribute fentanyl or a fentanyl analog in violation of 21 U.S.C. 846; and that he aided and abetted the possession with intent to distribute fentanyl or a fentanyl analog in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. [DE 1]. The United States properly moved for detention under 18 U.S.C. § 3142(f)(1)(B) and (C). Based on the testimony, proffer, arguments, and the Pretrial Services Report ("PSR") tendered by the United States Probation Office, the Court finds that Williams' release poses an irremediable risk of danger to the community and accordingly grants the government's motion for detention for the reasons explained below.

I.   ANALYSIS

A.   LEGAL STANDARD FOR DETENTION UNDER THE BAIL REFORM ACT

The Court afforded both sides all procedural rights outlined in the Bail Reform Act ("BRA"). A detention presumption arises under the BRA as to both nonappearance and danger risk because of the nature of the charges. 18 U.S.C. § 3142(e)(3)(A). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010), frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a nonappearance nor a danger risk. *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

The facts in Williams' proffer and the bond report, described below, provided sufficient evidence to overcome the presumption as danger. Thus, the burden shifted

back to the United States to prove detention was warranted based on either nonappearance risks or danger to the community. Detention premised on nonappearance requires preponderant evidence. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given the hearing's informality, the Court properly considers a wide

range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus.

B.  **WILLIAMS' DANGER TO THE COMMUNITY**

    1.  **Williams' History and Characteristics**

The Court must consider many aspects of Williams' background in making the decision to release or detain him. Specifically, the BRA requires courts to "take into account the available information concerning— [ . . . ] the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation[.]" 18 U.S.C. § 3142(g)(3).

Williams is a lifelong resident of Cincinnati, Ohio. [PSR at 2]. He reports having four biological children, two of whom are minors and in his custody following the death of his wife. [PSR at 2]. Since his arrest on April 2, 2025, on related Kentucky state charges, Williams has remained in custody. His children are currently in the care of his mother. [PSR at 2].

Before the conduct underpinning the Indictment, Williams has a lengthy criminal record consisting largely of minor traffic or misdemeanor offenses and dismissed charges. His prior convictions include a 2004 conviction for trafficking in cocaine and a 2005 conviction for cocaine possession. [PSR at 6–8]. In 2016, Williams was charged with trafficking in cocaine and heroin, though those charges were later dismissed. [PSR at 11]. The following year, he was indicted in Ohio state court for

possessing heroin, fentanyl, and carfentanyl. [PSR at 12]. Those charges were also dismissed after the Southern District of Ohio charged him with one count of aiding and abetting distribution and attempt to distribute a controlled substance, and one count of aiding and abetting distribution and possession with intent to distribute a controlled substance. [PSR at 12].

According to the PSR, the government alleged in the Southern District of Ohio case that Williams was responsible for preparing drugs for distribution and linked him to 1.885 kilograms of carfentanyl or a mixture containing heroin, fentanyl, and fentanyl analogues stored at two locations. [PSR at 13]. The government also alleged that he possessed firearms in furtherance of drug trafficking. Williams was convicted and sentenced to 72 months' imprisonment followed by an eight-year term of supervised release. His supervision began on February 13, 2023. [PSR at 12].

Williams' criminal history, particularly his prior involvement in trafficking dangerous controlled substances, indicates that the allegations in the present Indictment are not an isolated occurrence. He has previously been convicted of participating in a distribution scheme involving similarly lethal substances and in similarly large quantities. At the time of the charged conduct, Williams was on federal supervision, and there is an active warrant for his arrest on allegations that he violated the terms of his supervision as a result of the Indictment.

    2.    **<u>The Offense Charged</u>**

The United States offered proffer and proof regarding Williams' alleged drug trafficking activities, mostly through the testimony of FBI Special Agent Thompson Hagan ("SA Hagan"). According to SA Hagan, the investigation began in late March

2025 when a confidential witness, referred to as Witness 1, was introduced to Williams through a third party. In recorded conversations—both audio and video—Williams allegedly discussed selling kilograms of carfentanyl, initially quoting a price of $85,000 before agreeing to $65,000 for two kilos. During a FaceTime call recorded and later obtained by the government, Williams appears to display a kilogram of narcotics. Notably, in one conversation between Witness 1 and Williams, Williams references an obituary and suggests that an associate died after exposure to the narcotics, presumably due to their potency.

According to SA Hagan, after the recorded negotiations, Witness One arranged to obtain a sample of the product. On April 1, 2025, Witness 1 met Williams at a sports bar in Cincinnati, where they remained for several hours before Williams led Witness 1—who followed in a separate vehicle—to Craig Avenue. There, Newton emerged from a nearby townhouse carrying a backpack and approached both Williams and Witness 1. SA Hagan identified Newton as the individual with the backpack based on his distinctive dreadlocks and confirmed his identity through surveillance and witness corroboration. Newton interacted briefly with both men and allegedly supplied the sample from the backpack's contents. SA Hagan testified that the backpack also contained two kilograms of suspected fentanyl and carfentanyl intended for later delivery.

The following day, Witness 1 arranged for the full transaction to occur in Lexington, Kentucky. Williams and Newton traveled to Sedona Taphouse in Lexington, where they met with Witness 1. Although the drugs were not present at

that location, a FaceTime call connected the group to co-defendant Adrian Lattimore, who was parked nearby at a Walmart and later moved to the parking lot of Divas Gentlemen's Club. Surveillance footage captured Newton and Williams meeting Lattimore in the parking lot, where Lattimore transferred a bag from his vehicle into the white Nissan that Williams and Newton had arrived in. Afterward, both Williams and Newton entered Divas. SA Hagan testified that no one interacted with the vehicle, and in particular the back two doors, after the bag was placed inside. Shortly thereafter, law enforcement detained the suspects and recovered the bag from the backseat of the Nissan, which, in plain view, contained two suspected kilograms of fentanyl and carfentanyl. Lab testing confirmed the presence of both substances.

Although the Court has found that Williams rebutted the presumption that attaches to these types of allegations, "[t]he presumption in favor of detention does not vanish simply because a defendant comes forward with evidence to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class.'" *United States v. Lattner*, 23 Fed. App'x. 363, 364, (6th Cir. 2001) (citing *United States v. Martir*, F.2d 1141, 1144 (2d. Cir. 1986)). These charges, and the circumstances surrounding them strongly in favor of detaining Williams.

### 3. The Weight of the Evidence of Dangerousness

In weighing the strength of the evidence, the district court may not modify or limit the defendant's presumption of innocence. 18 U.S.C. § 3142(g). "[T]he § 3142(g) analysis is concerned with a practical assessment of the defendant's dangerousness,

rather than an adjudication of guilt for a particular offense." *United States v. Tolbert*, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citing Stone, 608 F.3d at 948).

This BRA factor is somewhat duplicative of § 3142(g)(1) and (3) because in considering a defendant's overall dangerousness, the Court must consider the facts of the crime alleged as well as evidence that the defendant has been dangerous in the past, such as criminal history and a history of violent behavior. Williams' criminal history reflects a pattern of violence and escalating criminal conduct. Not only was he on federal supervision for a serious drug trafficking conviction when the current offenses occurred, but the evidence of his involvement in the alleged scheme of trafficking highly dangerous narcotics is substantial. Both the aggravating nature of his prior trafficking convictions and the strength of the government's case support a finding that the weight of the evidence strongly favors danger-based detention.

### 4. The Nature and Seriousness of Danger Posed by Release

The Court must weigh "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). In cases involving drug trafficking, courts have repeatedly recognized the grave threat such conduct poses to the community. *See, e.g.*, *United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (noting that the "sale of drugs [ ] establish[es] a significant danger"); *United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004) ("[T]he danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community[.]").

The United States contends that Williams poses an unmitigable danger to the community, emphasizing both the lethality and volume of the controlled substances involved and Williams' central role in the trafficking operation. SA Hagan testified that carfentanyl is among the most dangerous controlled substances. The government introduced audio recordings in which Williams acknowledged this danger, telling Witness 1 that an associate had died from exposure to the same narcotics Williams is alleged to have trafficked. According to the government, Williams' continued promotion of such substances despite this knowledge demonstrates a reckless disregard for human life. The Court finds this argument persuasive, particularly in light of the specific drugs and quantities at issue.

The government further argues that no release conditions can adequately mitigate Williams' danger to the community. As a "kilogram-level dealer" with numerous associates, Williams requires only a cell phone to facilitate drug transactions. Much of the government's evidence consists of recorded FaceTime calls, underscoring the ease with which Williams can operate remotely. Courts have recognized that in such circumstances, electronic or location monitoring is ineffective to reduce the risk of danger. *See United States v. Nova*, No. CR 16-060-02 S, 2016 WL 6471205, at *2 (D.R.I. Nov. 1, 2016) (finding electronic monitoring insufficient to mitigate danger where the defendant could carry out a heroin distribution scheme from home).

The government also notes that Williams is currently serving a term of federal supervision for a prior drug trafficking conviction. His alleged involvement in the

instant offense reflects a rapid return to criminal conduct, undermining confidence in his willingness or ability to comply with any conditions of release. Although defense counsel argues that the serious consequences Williams now faces—both in this district and in the Southern District of Ohio—provide strong incentive for compliance, the Court finds such assurances unconvincing when weighed against the government's clear and convincing evidence of dangerousness. Given the nature of the conduct, the high risk of continued trafficking, and Williams' history, the Court concludes that no condition or combination of conditions will reasonably assure the safety of the community. Accordingly, danger-based detention is required under the BRA.

C.  **WILLIAMS' RISK OF NONAPPEARANCE**

The United States did not make substantial arguments regarding Williams' risk of nonappearance, except to imply that the penalties he is facing may create an incentive to flee. This argument, however, was insufficient to meet the government's preponderance burden to detain Williams based on a risk of nonappearance given that release in this matter would immediately result in his arrest on the supervised release violation warrant out of the Southern District of Ohio. Thus, nonappearance-based detention is not proper under the BRA.

II.  **CONCLUSION**

For the above-stated reasons, the Court finds the United States failed to prove by a preponderance of the evidence that Williams poses a risk of nonappearance but

proved by clear and convincing evidence that Williams is an irremediable danger to the community and the Bail Reform Act mandates detention.

The Court has assessed the record, contemplated the risks, evaluated conditions, and determined that no conditions exist that can reasonably assure Williams will not pose a danger to another or the community. Accordingly, the Court **GRANTS** the United States' oral motion for detention and **DETAINS** Defendant Williams.

Signed this the 7th of August, 2025.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY